Mr. Justice Clayton
delivered the opinion of the court.
In November, 1841, the complainant, Thomas Hardeman-, purchased of James Cowan a tract of land in Yalabusha county, for the sum of $3600, and it was agreed that Cowan should mate title by deed, with general warranty, by 1st of March, 1842. At the time of the sale, there were judgments against Cowan in the circuit court of that county, for about $1000; and it was a part of the contract that Hardeman should pay $600 towards satisfaction of these judgments, by the 1st of January, 1842, and should pay the balance in three equal annual instalments, from said 1st of March, for which said Hardeman was to execute his notes payable in cotton, at ten cents per pound, to be delivered at Grenada. Cowan resided in the state of Tennessee, and returned thither soon after making the contract; Hardeman at the time resided on the land. Early in December, 1841, two writs of venditioni exponas were issued upon two of the judgments against Cowan, under which the land was twice sold by the sheriff, once on the 3d, and once on the 7th of January, 1842, for the aggregate sum of $375.50, to J. Lock Hardeman, the brother of the wife of Thomas Harde-man, and the land conveyed by the sheriff to him. Thomas Hardeman paid the $600 at the stipulated time. During the month of January, 1842, Cowan, without any knowledge of the sheriff’s sale, made a deed, in compliance with his agreement, which he sent to Thomas Hardeman, who refused to receive it, because of the sales previously made by the sheriff. Cowan also states that he sent money at that time to pay off the judgments under which the sales were made; but this is denied, and there is no proof. It is probably not very material.
Thomas Hardeman filed a bill against Cowan, for a rescission of the contract, on the ground of inability on the part of Cowan to convey and make title, according to his agreement. The answer asserts that the sale by the sheriff was brought about by Hardeman, in the absence of Cowan, to defraud him; that Harde-man was in possession, under his contract of sale; that he was still in possession, and had not been evicted. That he was not entitled to a rescission; that all he could claim was repayment *500 of what had been paid to take up the incumbrances; and that the purchase of J. Lock Hardeman was for the benefit of the complainant, or of his wife.
Cowan also filed a cross-bill for a specific performance, against Thomas Hardeman and wife, for whose use the purchases were alleged to have been made, and against the purchaser, J. Lock Hardeman. The answer of Thomas Hardeman and wife denies every allegation of fraud, and claims the land for Mrs. Hardeman. In his answer J. Lock Hardeman details his whole connection with the transaction, and sets forth all the circumstances, with becoming candor and fairness. It will be necessary to go into these with some minuteness, as the cause must turn upon those facts, in connection with his letters, made exhibits by Cowan.
In one of his letters he says : u I have only been the instrument in the hands of others, to do what was pre-resolved upon.” “I hope my meaning is now sufficiently understood, to make this close our correspondence upon a subject, in which 1 have never considered myself as principal.” In his answer he says, that on the day of sale, “ he stepped forward and assumed the place of his sister, and himself became the purchaser. That he became the purchaser, and thereby an instrument in the hands of his sister, to convey to any one whom she may designate.” “ That he freely and voluntarily offered to buy the land, and advance the means, claiming no profit in the matter, other than the satisfaction of rendering aid to an affectionate sister. Allowing her to sell for her own benefit, but in that case requiring payment of the cash advanced for the purchase of the land.” “ That he was but an instrument of his sister, in securing her a house, from which her husband was about to be ejected by law; and he has therefore written and spoken of himself, as but a second person in the transaction.”
All this goes very clearly to show the situation of J. Lock Hardeman. He did not purchase for himself, and the only interest which in truth he has, is the protection of the purchase-money he advanced. The real purchaser, therefore, was Mrs. Hardeman, the wife of the complainant.
*501 It is a well established general rule, that where a purchaser has been put in possession, he cannot afterwards acquire a title and set it up in opposition to the vendor. If he extinguish an incumbrance, or buy in an outstanding title, all he can ask or require, is the repayment of the money he has so laid out. 1 Sug. on Vendors, 642; Meigs’s R. 184; Meadows v. Hopkins, 4 Monroe, 297, 298; 2 Johns. Ch. 33. See Ayres v. Mitchell, 3 S. & M. 694.
It is said “the reason of this rule results from the relation which it has been found expedient to establish between vendor and vendee, to preserve the confidence, which in matters of contract, ought to exist between man and man, and prevent undue advantage from information acquired by means of such contract. Having recognized the title by the purchase, the purchaser shall do nothing to the prejudice thereof, so long as the relation continues.” Meigs, 185.
This reason is equally operative, whether the purchase of the incumbrance be, by the vendee or his wife. There is such an identity between them, that what under such circumstances cannot be done by the husband, cannot be done by the wife. The privity of estate between the vendor and the vendee, is what prevents the purchase. The-wife in some degree partakes of this relation; to permit her to purchase, when the husband is forbidden, would be a mere evasion of the rule. The rule is a general one, and should not be frittered away by refinements and exceptions.
So much of the decree as dimisses the bill of the complainant for a rescission of the contract, is affirmed. We think that on his cross-bill Cowan is entitled to a specific performance. The amount paid by J. Lock Hardeman for the land, must stand as a charge upon it, and must be repaid him with all interest. The notes, although payable in cotton, became absolute for the payment of money, upon the failure to deliver the cotton at the day. Rankin v. Sanders, 6 How. 58. A note of that description differs from one payable in bank notes.
The decree, in all these particulars, is correct, and the same is affirmed, and the cause remanded, that it may be carried into effect.