Wallace v. Wilson.

---

WALLACE, Respondent, v. WILSON *et al.*, Appellants.

1. One B. held a receipt issued to him by the receiver of the United States land office upon the entry by him of a tract of forty acres; also the register's certificate of the location by him of a military land warrant. No patents had been granted by the United States. B. assigned said receiver's receipt to W. by written endorsement as follows: "For value received, I assign the within to W. as collateral security, this 15th day of May, 1857. [Signed] B." At the same time he assigned the register's certificate by an endorsement identical with the above, with the exception that it was assigned "as counter security." *Held*, that parol evidence might be adduced to show that these assignments were made to secure two certain promissory notes executed by said B. in favor of said W.; that the said assignments created an equitable lien or mortgage in favor of W. upon the lands embraced in said receipt and certificate.

2. To entitle a person to invoke the aid of the rule that protects a *bona fide* purchaser as against a prior equity, it must appear that he made his purchase and paid the purchase money before he had knowledge of such prior equity; he should in his answer be full and explicit as to the time and terms of his purchase, and the payment of the purchase money.

*Appeal from Bates Circuit Court.*

Elisha Blevins and Willis J. Peak were indebted to Thomas B. Wallace upon two promissory notes, each for $616.86, one dated May 14, 1857, payable in three months; the other dated May 15, 1857, payable in six months. Said Blevins was in possession of a receiver's receipt, issued to him by the receiver at the land office at Warsaw, Mo., on the entry by him of a tract of forty acres. This receipt was dated March 24, 1856. He also was possessed of a register's certificate of the location by him of a military land warrant at the same office. The land warrant was for one hundred and twenty acres ; it was dated May 1, 1856. Said Blevins assigned said receipt by endorsement, as follows : " For value received, I assign the within to Thomas B. Wallace as collateral security, this 15th day of May, 1857. [Signed] Elisha Blevins." The register's certificate was assigned by endorsement, as follows : " For value received, I assign the within to Thomas B. Wallace as counter security, this 15th day of May, 1857. [Signed] Elisha Blevins." Wallace recovered judgments against said Blevins on said notes. On the 21st of July, 1857, Blevins conveyed the tracts of land embraced in said certificate and receipt to Simeon Wilson. By the deed the said tracts were described by the section, fractional section, township and range. The receipt of the consideration was recited.

Plaintiff, Wallace, seeks in this action to subject the land in Wilson's hands to the payment of the said promissory notes. He prays the foreclosure of his equity of redemption and the sale of said land. He alleges in his petition that the defendant Wilson purchased with notice of his equitable mortgage. Parol evidence was introduced by plaintiff to show that the debts intended to be secured by the assignment of the receipt and certificate were those evidenced by the promissory notes above referred to.

The court found in favor of plaintiff, that the defendant purchased with notice of plaintiff's equity, and decreed the sale of the land.

*Colman & Ballou*, for appellants.

I. The facts alleged in the petition, or proven, do not and should not constitute a cause of action. The doctrine of equitable mortgages created by a deposit of title deeds or legal titles, from its first inception in England, has been lamented, and never has been recognized in this state, and has been repudiated in Kentucky; (Vanmeter v. McFadden, 8 Mon. 438; Bowers v. Oyster, 3 Penn. 239;) also in Pennsylvania. (3 Barr, 233; see 19 Ves. 211; 11 Ves. 403; 8 Greenl. 250; 2 Story Eq. § 1020; 1 R. C. 1855, p. 364, § 40, 41, 42.) Parol mortgage is not good. The duplicate and certificate of the land warrant are not legal titles, or title deeds at common law, and their mere deposit, without any thing more, would not constitute an equitable mortgage. This would be going beyond the English doctrine, and the courts of England have refused to extend it. If, then, this duplicate and certificate are not at common law legal titles, a deposit, even with a parol agreement showing for what debt, &c., it was deposited to secure, would not constitute the deposit an equitable mortgage even in England, and should not in this state. But if it be insisted that the assignments constitute a legal mortgage, they are void, not being under seal; nor are they any conveyance of the land, and are also void for uncertainty, not specifying for what demand, or debts, or the amounts, to whom or when due, nor where payable, as it requires parol testimony to establish all these facts, which is not allowable under the statute of frauds and perjuries in this state. (R. C. 1855, p. 806; 7 Mo. 389; 11 Vesey, 403; 1 Ham. 281.) Even if the deposit of title deeds should be allowed to operate or constitute an equitable mortgage, it should not be extended to an assignment and deposit of duplicates and certificates of location of land warrants. (4 Litt. 169.) This deposit, as it is termed, and the assignments as they are, must be an interest in land, or else it is no lien, and should have been so fully reduced to writing as to make it valid and good agsinst the statute of frauds and perjuries. One assignment is as " collateral" and

the other as " counter;" " counter security" is not collateral. It can not be construed as meaning collateral but contrary; but the court changed its meaning and made the land in this certificate of location liable also for the debt, and that, too, upon parol testimony. If it be true that it is ambiguous, parol evidence in this case ought not to be allowed to utterly change its meaning, and the court should have pronounced that assignment at least void.

II. Wilson had no notice that the plaintiff had any claim in the lands. (8 Johns. 137; 4 Kent, 172; 3 Ves. 472; 2 Atk. 275; 2 John. Ch. 181; 12 John. 452; 3 Pick. 149.) The defendant proves fully by the deeds that he was a purchaser for a valuable consideration as well as by other testimony, and the plaintiff has not proved that he had any notice of his particular claim. The purchase was made in June and a title bond from Blevins to Wilson was first taken. Wilson gave his notes for it; afterwards the deeds were made in July, which recited the payment of the purchase money, and these recitals are evidence of payment till the contrary is proved; and all this took place before any suit was brought. Defendant could not prove the payment except by the deeds; he could not by Blevins, for he is a co-defendant. When the defendant took possession, the plaintiff should have notified him of his claim, and if this had been done before the purchase money was paid, then there might have been some pretence to hold this land liable.

*Hicks*, for respondent.

I. The assignments of the land certificates and their delivery by Blevins to respondent, and the agreements then made, constituted a good equitable mortgage. (Sto. Eq. § 1020; Rockwell v. Hobbs, 2 Sandf. Ch. 9; Welch v. Usher, 2 Hill, S. C., 167; 10 Sm. & Marsh. 418; 4 Kent Com. 154.) Appellant at the time of his purchase from Blevins had notice of respondent's lien on the land. In fact the answer does not deny notice. (8 Mo. 303; 4 Mo. 62.) The purchase money was not paid before the institution of this suit, if it has ever been paid.

NAPTON, Judge, delivered the opinion of the court.

The doctrine of equitable mortgages created by a transfer of the possession of title papers from a debtor to his creditor is not involved in the consideration of this case. The objection to that doctrine was, that it annulled or disregarded the statute of frauds; yet it was firmly established in England, despite of the doubts of eminent chancellors, and in this country, according to Judge Story and Chancellor Kent, has been pretty generally adopted. The case before us, however, requires no investigation of the subject. It is not a deposit of legal title papers, with a parol agreement that the transaction shall be considered a mortgage. The legal title was in the United States. The only evidences of title was a receiver's receipt for forty acres of the land, and the certificate of the register for the location of one hundred and twenty acres under the military bounty land, act of March 3, 1855. These papers were assigned to the plaintiff, by endorsement in writing, as collateral security, and the papers with their endorsements were delivered to plaintiff.

The parol evidence given on the trial, explanatory of the object of the assignment and the circumstances attending it, was unobjectionable. The testimony does not vary or contradict the effect of the writings, or add any thing to their validity. Where an absolute deed is converted into a mortgage by parol evidence, there is certainly, to say the least, an apparent contradiction between the written instrument and the parol testimony, yet this may be done according to the weight of authority now. Here the assignment on its face purports to be made only as collateral or counter security, and these terms may with propriety be explained.

But it is not material to the defendant whether the assignment was absolute or conditional. If it was absolute, his case is certainly not made any better, and to prove that it was conditional can not be productive of any injury to him. The main question, upon which the merits of the case depend, is whether the defendant Wilson is a *bona fide* pur-

chaser of this land from Blevins, without notice of plaintiffs' title. This question, under the old chancery practice, if tried by the chancellor without a feigned issue before a jury, would have been determined, not only by the testimony, but to some extent by the weight to which the defendant's answer might have been entitled. The defendant, to obtain the protection afforded to a purchaser for a valuable consideration without notice, was not allowed to rely upon mere general denials of notice. It was not sufficient for him to deny notice at the time of the purchase, but he must deny notice before payment; and if the purchase money was secured by notes, and the notes were unpaid, the plea was not good. (Jewitt v. Palmer, 7 John. Ch. 18; Halsa v. Halsa, 8 Mo. 303.) A party, occupying the position of dealing with another who was undeniably guilty of a fraud, was regarded as not entitled to the protection of a court of equity, unless he candidly disclosed all the facts which were peculiarly within his knowledge. It was easy for him to state the terms of his contract and the dates and amounts of his payments. It was easy for him to state whether the payments were in money, or in property, or in notes. In short, courts of equity required him to show that he would be injured by enforcing the plaintiff's demand against him; and if, in truth, nothing had been paid when the proceeding against him was commenced, or there was still any thing due, or he had made payments after he received notice of plaintiff's title, his plea of want of notice did not avail him.

It would be perhaps a mere matter of speculation to say what ought to be considered necessary in such answers under our present practice. A specific denial of such material allegation is all which the act in terms requires, unless there be new matter to allege or a counter claim to set up. It can not be said that the matter we have alluded to could be regarded as new matter of defence, and it certainly has none of the characteristics of a counter claim. A simple denial, therefore, of the plaintiff's allegations must probably be regarded as sufficient. But however the rule of pleading may

be, it is clear that if the defendant relies on his simple denial and fails to give any evidence supporting it after the plaintiff has made out a *prima facie* case against him, he must occupy a very unfavorable position with the tribunal selected to try the issue of notice.

In this case, two of the plaintiff's witnesses state that the purchase by Wilson was on time ; that no money was paid when the contract was made. One of these witnesses states that two notes were given by Wilson—one payable in November, 1857, the other in November, 1858. The defendant offered no evidence whatever on this point, although he had two depositions taken of witnesses who were also present when the bargain between him and Blevins was made. Their answers to leading interrogatories was simply in effect and in words that the sale was made in good faith and upon no conditions, without giving any facts. No witness proves the payment of any of the purchase money at any time, nor is any such payment unequivocally alleged in the answer. It is averred that the defendant at the time of the purchase, and at the time of the payment " *or assuming debts to others for Blevins*," and at the time of the conveyance, had no knowledge or information of plaintiff's claim or title. This expression seems to justify an inference that at least a portion of the purchase money was not paid down, but that the defendant assumed to pay certain liabilities of Blevins, and that this assumption of his was one of the means by which the purchase money was to be paid. It is not stated, in the answer, nor was any evidence offered on the trial of the issue, to show how much of the purchase money was to have been been paid in this way, when these liabilities became due, or whether they were due at the time of the commencement of this action.

The defendant, in his answer, relies altogether upon the fact that Blevins was in possession of the land, and in his evidence he relies solely upon the production of his deed. The latter can not be regarded as entitled to any weight in

opposition to the proofs produced by the plaintiff and the admissions made in the answer.

Possession of land, it is to be observed, is not upon a footing with the possession of personal property, when a question is raised as to title. Although when a man buys a tract of land from a vendor who is out of possession, that circumstance has been allowed to go in evidence as proof of notice, or as a fact which should have put the purchaser upon inquiry; it is a very different matter for a purchaser to resort to this fact as evidence of his want of knowledge of the condition of the title of the party in possession, and from whom he is buying. The only effect which possession of land can with propriety be allowed is to put a party upon inquiry; he is not of course to take the title as being with the possession, and if he is treating with the party in possession, he would be presumed to make some inquiries about the title. Lord Erkskine observed, in a case of this kind: "There is a marked distinction in this respect between a real estate and a personal chattel. The latter is held by possession; a real estate by title. It may be by lease or only from year to year. The cases have gone upon that distinction. Is there any instance of a purchaser upon mere possession ? If the vendor, being asked, acknowledges to the purchaser that the deeds are in the possession of another, who is to be postponed ? Here is *crassa negligentia.*" The Lord Chancellor afterwards adverted to the distinction between such cases and those in which the vendor is out of possession, and considers the cases as not conflicting, but maintaining the same general principle. He refers to the explanation of Lord Rosslyn, in Taylor v. Hibbert, 3 Atk. 294, in reference to a purchaser of an estate from the owner, knowing it to be in possession of tenants and not inquiring into the character of estate the tenants had, and adds: "No comparison can be made between these cases and the case now before the court with respect to the strength with which the principle applies. I repeat, that land is held not by possession, but by title;

not so as to personal chattels; for the common traffic of the world could not go on. Therefore a sale in market overt changes the property of a chattel; and that rule, that possession is the criterion of title to a chattel, has been adopted in the bankrupt acts; so that, if the owner has permitted the bankrupt to be the visible proprietor, the property is divested; for no one can distinguish the property except by the possession. But that is not so as to land, for no person in his senses would take an offer of a purchase from a man merely because he stood upon the ground. It is not even *prima facie* evidence. He may be a tenant by sufferance or a trespasser. A purchaser must look to his title, and if, being asked for the deeds, he acknowledges he has not got them, the purchaser is bound to further inquiry." (Hirn v. Hill, 13 Ves. 119, 121.) These remarks of Lord Erskine are not referred to as indicating the precise rules prevailing in our courts in reference to the doctrine of notice, either as it regards real or personal property, but they show how little weight is to be attached to the mere fact of Blevin's possession as evidence in favor of the defendant. They show that this circumstance rather operates against his case, and in England would be held to authorize a decree against him. In this country, the rule would not be so harsh, for the custom in reference to title deeds is not the same as in England. Taken in connection with the other circumstances of this case, the fact that Blevins was in possession of the land and could produce no evidences of title whatever, is calculated to produce an unfavorable impression of the defendant's course. An inquiry, it seems, was made for the "duplicates," as the certificates of the land officers were termed; but they were not produced, for the plaintiff was in possession of them. Under many circumstances this incident would have but little weight with a court; but when it is seen that Blevins and Peak had been in partnership as traders; that Peak was notoriously insolvent; that Blevins' liabilities, outside of his indebtedness to plaintiff, were assumed by the defendant, it is not certainly strange that the defendant would be willing

to conclude a purchase of a tract of land, pay the purchase money, and rely upon the deed of Blevins, without any other evidence that he had any title than his bare possession of the land.

Several of the statements in the defendant's answer are singularly confirmatory of his gross negligence in acquiring information concerning the condition of the title. These statements are as follows : " This defendant further states that he has no sufficient knowledge or information to form a belief whether or not said Elisha Blevins, at the time the notes mentioned in plaintiff's petition are alleged to have been executed, was or was not the owner of the north-east quarter of the south-west quarter of section number eight, township forty-two, range twenty-seven, containing forty acres ; nor has any knowledge or information as to the title of said Blevins. This defendant has no sufficient knowledge or information to form a belief whether or not said Elisha Blevins, at the time the notes mentioned in said plaintiff's petition are alleged to have been executed, was or was not the owner of the south-west quarter of the north-east quarter, and the north-west quarter of the south-east quarter, and the north-west quarter of section number eight, township forty-two, range twenty-seven ; nor any knowledge or information sufficient to form a belief as to the title of said Blevins at the time." " This defendant has not sufficient knowledge or information to form a belief as to the allegation in plaintiff's petition that Blevins never had any title deed or deeds to said land except said duplicate receipt and the said certificate of location." Considering that the defendant purchased this land in less than two months after the date referred to in his answer, his utter destitution of all information concerning the title ought, at least, to convict him of gross negligence. If Blevins had misled him by false statements concerning the custody and transfer of the certificates, why not say so ? Why not disclose the facts so that the court can see how he was misled, and how he would be injured, if he should be considered as having been in collusion with Blevins ?

The conclusion from the evidence and from the answer is, beyond all doubt, that the purchase money was not all paid at the execution of the conveyance. The defendant admits this by conceding that a portion of the payment, at least, was an assumption of Blevins' liabilities to others. It was in the power of the defendant to have made the facts concerning the times and modes of payment entirely certain. He has not thought proper to introduce any evidence on the subject. If the testimony of the plaintiff's witnesses is to be relied on, one of the notes given by the defendant was not due for nearly a year after this suit was brought, and the other had only fallen due for less than a month. Under these circumstances, we do not feel disposed to express any dissatisfaction with the finding of the circuit court. We think the court ought to have submitted the question to a jury; but as the court did not think it necessary to do so, and after hearing the evidence has found the issue against the defendant, we can not say the finding ought to have been otherwise. On the contrary, we should come to the same conclusion on the evidence. But we would have preferred, as before observed, that this disputed question of notice had been left to the jury.

Judgment affirmed. The other judges concur.