TRICE et al. v. COMSTOCK et al.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1903.)

No. 1,808.

1. TRUST—FIDUCIARY RELATIONS—ESTOPPEL.

Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.

2. SAME—CONSTRUCTIVE TRUST—ADVERSE INTEREST ACQUIRED.

A violation of this inhibition, and the acquisition by one of the parties, by means of interest or information acquired through the fiduciary relation of any property or interest, which prevents or hinders his correlate in accomplishing the object of the agency, charges the property thus acquired with a constructive trust for the benefit of the latter, which may be enforced or renounced by him, at his option.

3. SAME—TEST OF CONSTRUCTIVE TRUST BETRAYAL OF CONFIDENCE—NOT INTEREST, AUTHORITY, OR DAMAGE.

The test of such a trust is the fiduciary relation, and a betrayal of the confidence imposed under it to acquire the property. Neither a legal nor equitable interest by either party, during the relation, in the property subsequently acquired, nor authority in either to buy or sell it, nor damage to the party betrayed, nor the existence of the fiduciary relation at the time the confidence is abused, is indispensable to the existence and enforcement of the trust. The existence of the relation, and a subsequent abuse of the confidence bestowed under it for the purpose of acquiring the property, are alone sufficient to authorize the enforcement of the trust.

4. SAME—CONSTRUCTIVE TRUST ENFORCED—FACTS.

Real estate dealers who were engaged in procuring from owners options to purchase their property at fixed prices, and in selling it at higher prices, retaining the difference themselves as their profits, employed a resident of another state as their agent to solicit and conduct to their county probable purchasers of lands, and agreed to pay him his traveling expenses and 50 cents an acre on all the lands sold to the customers he brought. The agent conducted a probable purchaser to his principals. He and the possible customer were shown a tract of 1,925 acres by his principals, which was for sale at the rate of $20 an acre by the owners, but in which the principals had no interest and upon which they had no contract. In this way the agent learned the location and value of the land. He was paid the expenses of his trip by his principals under the contract of agency. Three months later he renounced his agency, and one month thereafter, and while his principals were still endeavoring to sell the land to the possible customer whom he had conducted to them, the agent bought the land of the owners for himself at the price of $20 an acre. Held, the title to the land obtained by the agent was

charged with a constructive trust for the use and benefit of his principals, which a court of equity would enforce.

**5. EQUITY—WRONG OF COMPLAINANT BARRING RELIEF.**
The principle, "He who comes into equity must do so with clean hands," repels a complainant only when his iniquity consists of wrongful conduct in the acts or transactions which raise the equity he seeks to enforce.

**6. BONA FIDE PURCHASER—PAYMENT BEFORE NOTICE INDISPENSABLE.**
The actual payment before notice of the purchase price is indispensable to the maintenance of the claim that one is a bona fide purchaser of property for value without notice.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 115 Fed. 765.

This is an appeal from a decree which dismissed a bill exhibited by Charles Y. Trice and David A. Beamer to charge the title of 1,925 acres of land, held by the defendant James O. Comstock, with a trust for the use and benefit of the complainants. The pleadings contained many allegations and denials, but the evidence disclosed these facts:

Trice and Beamer were engaged in dealing in real estate at Lamar, in Barton county, Mo. They were in the habit of obtaining the right to purchase lands at fixed prices from the owners, of selling them at higher prices, and of making the difference themselves. Sometimes they procured contracts from the owners whereby it was stipulated that they might sell the lands and retain for their compensation the difference between the prices fixed in the agreements and the prices at which they were able to sell them. The land in controversy in this suit was situated in Barton county. It consisted of 1,925 acres, and the title to it was in Alfred P. Reid and Eoline G. Green, the executor and executrix of the will of Henry B. Buckwater, who had died in 1897. George E. Bowling, of Barton county, had been the agent of Buckwater to rent and care for these lands for many years prior to his death, and was the agent of the executors for the same purpose after his decease. Bowling claimed that he had power from the executors to sell the lands, but this claim is not sustained by the evidence. The lands were for sale by the executors at the price of $20 per acre, and the complainants were aware of this fact. Bowling informed Trice and Beamer that he had the right to sell the lands for that price, and made an agreement with them to the effect that they should have the option or right to purchase them at that rate, and Trice and Beamer supposed that he had the power to make this contract. George H. Reitmeyer was a dealer in real estate at Maquoketa, in the state of Iowa. C. W. Comstock was a banker at Lost Nation, in that state, and James O. Comstock was his brother.

In this state of the case, the complainants, Trice and Beamer, made an agreement with Reitmeyer and C. W. Comstock to the effect that the complainants appointed Reitmeyer and Comstock their agents to procure and conduct to Barton county, Mo., purchasers for lands controlled by Trice and Beamer in that county, and agreed to pay them for their services one-half the railroad fare of the intending purchasers, all the railroad fare and traveling expenses of the agents in conducting the customers from Iowa to Missouri and return, and $1 per acre for all lands in Barton county, Mo., sold to customers furnished by Reitmeyer and Comstock. In May, 1899, Reitmeyer and Comstock entered upon the discharge of their duties as agents for the complainants under the contract. The complainants wrote a general description of the 1,925 acres of land here in controversy to Comstock, and he conducted to Barton county a Mr. Shirk for the purpose of inducing him to buy this tract of land. The complainants took Comstock and Shirk to the lands, drove them around and over a portion of them, showed the corn-cribs, the products of the property, its character and quality, and the rents it was

---

¶ 5. See Equity, vol. 19, Cent. Dig. § 186.

likely to produce. They were not successful at that time in inducing Mr. Shirk to purchase, but continued their endeavors to sell the land to him after he returned to Iowa. C. W. Comstock learned the character, quality, and location of this land, its rental value, its occupation, the probable amount of rents it would produce, and essentially all the facts he ever learned concerning its value, under and by virtue of his services as one of the agents of Trice and Beamer to conduct customers to the land for the purpose of enabling them to sell it. The complainants paid Comstock his railroad fare and traveling expenses from Iowa to Barton county, Mo., and return, and a portion or all of the expense of Mr. Shirk. In August, 1899, Comstock conducted a party of land seekers from Iowa to Barton county, and the complainants displayed the lands which they controlled to them, and endeavored to induce them to purchase. At that time Comstock notified the complainants that he would bring no more customers to Barton county, and that all relations between them were closed. But Reitmeyer and Trice and Beamer were still negotiating to persuade Mr. Shirk to buy these lands. While these negotiations were pending, and on September 15, 1899, Comstock bought an option to purchase the land from Reid and Green, the executors of the will of Buckwater, and paid $75 for it. About October 12, 1899, C. W. Comstock assigned this option to his brother, James C. Comstock. On or about October 16, 1899, C. W. Comstock paid Reid and Green $1,925 on account of the purchase of this land, and on January 4, 1900, James C. Comstock deposited $10,000 with C. W. Comstock, out of which, he testifies, the $2,000 was paid back to C. W. Comstock. About March 1, 1900, James C. Comstock paid, out of this deposit of $10,000, $6,000 in part payment of the purchase price of the land, and secured a deed to it from Reid and Green. At the same time he executed his note for the sum of $30,000, and a trust deed or mortgage of the land to Reid and Green to secure its payment. Before he obtained this deed or paid the $6,000 he was notified of the claim of Trice and Beamer, which is presented in this suit. James C. Comstock never paid C. W. Comstock anything for the option on the land, although the latter estimated its value at far in excess of its purchase price. C. W. Comstock conducted the negotiations and managed all the business relative to the land after he assigned the option to his brother, as before.

On April 30, 1900, the complainants exhibited their bill against C. W. Comstock and James C. Comstock to the judges of the Circuit Court, in which they prayed that the defendants might be decreed to hold the title to these lands in trust for their use and benefit, and that they might be directed to convey them accordingly. The court below held that the foregoing facts disclosed no equity which entitled the complainants to relief, and dismissed the bill.

B. G. Thurman and R. B. Robinson (H. H. McCluer, on the brief), for appellants.

John C. Tarsney, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge (after stating the case as above, delivered the opinion of the court). For reasons of public policy, founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former

all commission or compensation for his services. This inexorable principle of the law is not based upon, nor conditioned by, the respective interests or powers of the parties to the relation, the times when that relation commences or terminates, or the injury or damage which the betrayal of the confidence given entails. It rests upon a broader foundation, upon that sagacious public policy which, for the purpose of removing all temptation, removes all possibility that a trustee may derive profit from the subject-matter of his trust, so that one whose confidence has been betrayed may enforce the trust which arises under this rule of law although he has sustained no damage, although the confidential relation has terminated before the trust was betrayed, although he had no legal or equitable interest in the property, and although his correlate who acquired it had no joint interest in or discretionary power over it. The only indispensable elements of a good cause of action to enforce such a trust are the fiduciary relation and the use by one of the parties to it of the knowledge or the interest he acquired through it to prevent the other from accomplishing the purpose of the relation. .

And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence. The relation of trustee and cestui que trust, principal and agent, client and attorney, employer and an employé, who through the employment gains either an interest in or a knowledge of the property or business of his master, are striking and familiar illustrations of the relation. From the agreement which underlies and conditions these fiduciary relations, the law both implies a contract and imposes a duty that the servant shall be faithful to his master, the attorney to his client, the agent to his principal, the trustee to his cestui que trust, that each shall work and act with an eye single to the interest of his correlate, and that no one of them shall use the interest or knowledge which he acquires through the relation so as to defeat or hinder the other party to it in accomplishing any of the purposes for which it was created. 2 Sugden on Vendors (8th Am. Ed.) 406–409; Mechem on Agency, pp. 455, 456; Tisdale v. Tisdale, 2 Sneed, 595, 608, 64 Am. Dec. 775; Ringo v. Binns, 10 Pet. 269, 280, 9 L. Ed. 420; McKinley v. Williams, 74 Fed. 94, 95, 20 C. C. A. 312, 313; Lamb v. Evans [1893] 1 Chan. Div. 218, 226, 236; Connecticut Mutual Life Ins. Co. v. Smith, 117 Mo. 261, 295, 22 S. W. 623, 38 Am. St. Rep. 656; Van Epps v. Van Epps, 9 Paige, 237, 241; ·1 Lewin on Trusts, 246, *180; Davis v. Hamlin, 108 Ill. 39, 49, 48 Am. Rep. 541; Winn v. Dillon, 27 Miss. 494, 497; People v. Township Board, 11 Mich. 222, 225; Grumley v. Webb, 44 Mo. 444, 454, 10 Am. Dec. 304; Lockhart v. Rollins, 2 Idaho, 503, 511, 21 Pac. 413; Eoff v. Irvine, 108 Mo. 378, 383, 18 S. W. 907, 32 Am. St. Rep. 609; Robb v. Green, [1895] 2 Q. B. 315, 317, 318, 319, 320; Louis v. Smellie (1895) 73 Law Times (N. S.) 226, 228; Gardner v. Ogden, 22 N. Y. 327, 343, 350, 78 Am. Dec. 192.

Why is not the case at bar governed by these rules of law? The defendant C. W. Comstock was the agent of the complainants to conduct to them in Barton county, Mo., probable buyers of land,

to the end that they might sell land in that county to them, and gain a profit of the difference between the price at which the owners were willing to sell it and the price at which the complainants might be able to dispose of it. Comstock accepted this agency and acted under it. He conducted Mr. Shirk, his acquaintance and a possible customer, from his residence in Iowa to Barton county, Mo., and accepted from Trice and Beamer his traveling expenses for his service under his contract of agency. By means of this agency he learned what he probably never would have known otherwise, the location, quality, value, products, and probable income of the 1,925 acres of land in controversy. One of the objects of the agency which the complainants gave him was to enable them to sell this land. The subsequent purchase of it by Comstock prevented the accomplishment of this end. Could he lawfully take the information and advantages which Trice and Beamer conferred upon him through this agency to the end that they might make a sale of this land by means of his services under it, and then use this information and these advantages to make such a sale impossible, to deprive his principals of all the benefits which they hoped to derive from the payment of his expenses, and the exhibition of this land to the possible customer? Could he lawfully appropriate to himself the land and all the benefits derived and expected from the agency? The answers to these questions do not seem to be difficult or doubtful. The law imposed upon this agent, Comstock, the duty to use all the knowledge and all the benefits he derived from his agency to accomplish the purpose of his principals, and it implied an agreement on his part that he would faithfully discharge this duty. It forbade him to use them for his sole benefit or to prevent his principals from obtaining the object of the agency, and charged everything which he acquired by a violation of this inhibition with a constructive trust for their benefit. Why were not the lands in his hands charged with this trust for the use of the complainants?

It is contended that no trust arose because Trice and Beamer had no interest in or control over the lands. But no interest or control of the property to which the agency relates is essential to the raising of the trust. The fiduciary relation and a breach of the duty it imposes are sufficient in themselves. Winn v. Dillon, 27 Miss. 494, 497; People v. Township Board, 11 Mich. 222, 225; Grumley v. Webb, 44 Mo. 444, 454, 10 Am. Dec. 304; Lockhart v. Rollins, 2 Idaho, 503, 511, 21 Pac. 413. If one employs and pays an agent to investigate the title or the character of land for the purpose of purchasing it, and the agent uses the knowledge he acquires in this way to forestall his principal and obtain a title to the property for himself, it is no answer to the suit of the former to recover the land from his agent that the employer never had any title or interest in it, or that he was not injured by the action of the agent. In Winn v. Dillon, 27 Miss. 494, 495, the complainant, Winn, employed Dillon for the agreed compensation of $200 to search out and furnish to him the numbers or descriptions of state lands which he might enter under an act of the Legislature of the state of Mississippi Dillon furnished the descriptions pursuant to the contract. But before Winn

had completed his entry of the lands Dillon entered them in his own name and for himself. Neither of these parties had any interest in, or control over, this property during the time that the contract of employment or agency was in force, but the court said: "Winn's object was to enter the lands; he had engaged the services of Dillon to that end, and this created the relation of private trust and confidence which disabled Dillon from doing any act or acquiring any interest in the property adverse to the interest of Winn;" and it declared that the title in the hands of Dillon was charged with a trust for the use and benefit of his employer, Winn. Concede that the complainants had no contract for the purchase of this land from its owners, Reid and Green, yet they knew that it could at any time be purchased for the price of $20 per acre. Their scheme was to buy it at that price and sell it at a higher one. This was a legitimate business enterprise. The object of the agency of Comstock was to carry out this plan. His use of the knowledge he acquired through his agency to prevent his principals from accomplishing this purpose and to appropriate the benefits of the scheme to himself alone was as flagrant a breach of confidence and as fatal to his title to this property as it would have been if Trice and Beamer had held an unassailable agreement for the purchase of the land.

Nor is it any defense to the suit to enforce this trust that the agency had terminated before the confidence was violated. The duty of an attorney to be true to his client, or of an agent to be faithful to his principal, does not cease when the employment ends, and it cannot be renounced at will by the termination of the relation. It is as sacred and inviolable after as before the expiration of its term. Eoff v. Irvine, 108 Mo. 378, 383, 18 S. W. 907, 32 Am. St. Rep. 609; Robb. v. Green [1895] 2 Q. B. 315, 317–320; Louis v. Smellie (1895) 73 Law Times (N. S.) 226, 228. In Eoff v. Irvine, after an attorney had examined an abstract of title for a client and after the relation had ceased, he, by the use of the knowledge he had acquired in the examination, secured the title to the property for himself and his friends, but the court decreed that they held it in trust for his former client. In Robb v. Green, a manager of a business copied the names of the customers from the order book of his master, the proprietor. After the manager's term of service had ended, he established a business in competition with that of his master, and proceeded to use the names of customers he had copied to divert business to himself, but the court decided that he held this information in trust for his former master, and enjoined him from using it against him.

Another objection earnestly urged against the equity of the complainants is that Comstock had no discretionary power, no authority to sell the land; that his only agency was to solicit and conduct probable customers to his principals; and that, if he was disabled from purchasing this Buckwater tract, he was disabled from buying any land in Barton county. It does not follow that Comstock was forbidden to purchase any land in Barton county because he was disabled from buying the Buckwater tract. He was prohibited from using the information and advantages he had secured by means of

121 F.—40

his agency to prevent or hinder his principals from accomplishing the purpose of the agency. His disability extended to all land by the purchase of which through the information and benefits he had derived from the agency he would hinder or obstruct his principal's business of buying and selling lands in Missouri. But it extended no farther. He was at liberty to deal in any lands in Barton county concerning which he had learned nothing by the means of his agency. But he could not lawfully use any information or interest acquired thereby to destroy or to injure the business of his principals.

Nor was discretion or authority to sell these 1,925 acres of land requisite to disable this agent from buying and holding them adversely to his principals. Every agency creates a fiduciary relation, and every agent, however limited his authority, is disabled from using any information or advantage he acquires through his agency, either to acquire property or to do any other act which defeats or hinders the efforts of his principals to accomplish the purpose for which the agency was established. In Gardner v. Ogden, 22 N. Y. 327, 343, 350, 78 Am. Dec. 192, the clerk of the brokers of the plaintiffs, was held to be disabled from buying the plaintiffs' property, although he never had any discretion or authority relative to the sale of it. In Winn v. Dillon, 27 Miss. 494, 497, Dillon was declared to be disabled from purchasing the lands he acquired, although the only authority he ever had was to search out and report their descriptions. In Davis v. Hamlin, 108 Ill. 39, 49, 48 Am. Rep. 541, an agent of a lessee to procure amusements for his theater, who never had any authority to deal with the leasehold estate, was held to be disabled from taking a renewal of the lease himself, and was adjudged to hold the leasehold interest which he had secured for the exclusive use and benefit of his principal.

The truth is that the principle of law which controls the determination of this case is not limited or conditioned by the interests, powers, or injuries of the parties to the fiduciary relations. It is as broad, general, and universal as the relations themselves, and it charges everything acquired by the use of knowledge secured by virtue of these trust relations and in violation of the duty of fidelity imposed thereby with a constructive trust for the benefit of the party whose confidence is betrayed. It dominates and controls the relation of attorney and client, principal and agent, employer and trusted employé, as completely as the relation of trustee and cestui que trust. In Greenlaw v. King, 5 Jur. 19, Lord Chancellor Cottenham, speaking of this doctrine, says: "The rule was one of universal application, affecting all persons who came within its principle, which was that no party could be permitted to purchase an interest when he had a duty to perform which was inconsistent with the character of a purchaser." In Hamilton v. Wright, 9 Cl. & Fi. 111, 122, Lord Brougham declared that it is the duty of a trustee "to do nothing for the impairing or destruction of the trust, nor to place himself in a position inconsistent with the interests of the trust." And on page 124 he said: "Nor is it only on account of the conflict between his interest and his duty to the trust that such transactions are forbidden. The knowledge which he acquires as trustee is of itself sufficient ground of disqualification, and

of requiring that such knowledge shall not be capable of being used for his own benefit to injure the trust." The rule upon this subject was clearly and not too broadly stated in the American note to Keech v. Sandford, 1 White & T. Lead. Cas. in Eq. (4th Am. Ed.) p. 62, *page 58, in these words: "Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated." The facts of the case in hand brought it squarely within this rule, charged the title which the agent Comstock acquired with a constructive trust for the benefit of his principals, and furnished substantial ground for their application to a court of equity for appropriate relief.

It is contended, however, that the complainants are entitled to no remedy in equity because they have been guilty of iniquity. It is said that their plan of obtaining from owners options to purchase their lands at fixed prices, of then selling at an advance, and retaining the profits, and of obtaining agreements from owners that they might sell the lands at a price above that fixed in the contracts, and retain the balance for their compensation,,was reprehensible, and that they conspired with Bowling to induce Reid and Green to sell their lands at a low price. There are two sufficient answers to these arguments. They are (1) that the record discloses nothing unfair or inequitable in the plans or acts of the complainants, and (2) that the acts to which the defendants object neither conditioned nor affected the equity which the complainants now seek to enforce. There was nothing evil in itself, forbidden by law, or obnoxious to the strictest rules of fair dealing in the plan of business which the complainants had adopted. It contemplated no deceit of the owners of lands. In each case these owners were completely informed either that the complainants proposed to buy their property at the prices which the owners fixed and to make a profit for themselves by selling it again at a higher price, or that they proposed to sell the lands at as high a price as they could obtain, to return to the owners the price which the latter fixed, and to retain the difference as their profit in the transaction. There is no suggestion of iniquity, injustice, or unfairness in such a method of dealing. Larow v. Bozarth, 68 Mo. App. 406.

Nor was there anything reprehensible in the endeavors of complainants to obtain from the owners of the lands here in controversy a contract for their purchase at the lowest possible price. They were not the agents of the owners. Bowling was their agent. The complainants are not responsible for his acts and transactions. They are not in issue in this case, and they will not be discussed. Bowling and the owners of the land whom he represented stood upon one side, and the complainants upon the other, in the negotiations for the sale of these lands to the latter. The complainants were prospective buyers. Reid and Green were sellers. The complainants were dealing with the vendors at arm's length. To them the lowest, to Reid and Green the highest, price, was the desideratum, and Trice and

Beamer had the right to use all fair and reasonable means to buy the land from their owners at the lowest price which they were willing to receive for it. There is no evidence in this case that they made any false representations to the executors or to Bowling, or that they used any unfair means to obtain a contract for the purchase of the lands, while the fact that the agent, C. W. Comstock, was willing to take them, and Reid and Green sold them to him at the same price at which the complainants were expecting to buy them, is very persuasive evidence that no fraud was perpetrated upon the executors.

Moreover, if the charges which the defendants make against the complainants were true, they would constitute no defense to this suit. Their alleged offenses were not against the defendants, but against the former owners of this property. These owners have made no complaint and their rights and remedies are not here in question. The only issue here is whether or not the constructive trust which the betrayal of confidence by the agent Comstock has raised shall be enforced. General iniquitous conduct, reprehensible acts toward third parties, do not deprive a suitor of his right to justice in a court of equity. Wrongful conduct in the very act or matter which constitutes the complainant's ground of action, and that alone, will repel from a court of equity on the ground that "he who comes into equity must do so with clean hands." This rule does not disqualify any complainant from obtaining relief who has not dealt unjustly in the very transactions concerning which he complains. Shaver v. Heller & Merz Co., 48 C. C. A. 48, 61, 108 Fed. 821, 834; Woodward v. Woodward, 41 N. J. Eq. 224, 225, 4 Atl. 424; Dering v. Earl of Winchelsea, 1 Cox, Ch. 318, 319; Lewis & Nelson's Appeal, 67 Pa. 153, 166; Bateman v. Fargason, 4 Fed. 32, 33, 2 Flip. 660; Bisp. Eq. 61; Mahoney v. Bostwick, 96 Cal. 53, 61, 30 Pac. 1020, 31 Am. St. Rep. 175. The acts charged against the complainants, even if they had been committed, did not tend to perpetrate any wrong or inflict any injury upon the defendants, raised no equity in their favor, and constituted no defense to the enforcement of the trust which their violation of duty established.

One of the defenses to this suit was that the defendant James C. Comstock, who now holds the title to the lands in question, was a bona fide purchaser thereof for value without notice of the claim of the complainants. The court below found that this defense was not sustained by the evidence, and that James C. Comstock stood in the shoes of his brother, C. W. Comstock, the agent of the complainants. Counsel for the defendants have not argued or suggested in this court that there was any error in this conclusion. But, as the case must now be remanded for final decee, the evidence and the law upon this question have been carefully re-examined. James C. Comstock was a brother of C. W. Comstock. C. W. Comstock procured his option to purchase the land on September 15, 1899. He paid $75 for it at that time. About October 16, 1899, he paid $1,925 in part payment of the purchase price. On March 1, 1900, $6,000 more was paid. The deed was taken to James C. Comstock, and the latter made his note and trust deed for $30,000. C. W. Comstock managed the land, conducted all the correspondence and business, caused the leases to

be taken to himself, acted in every way as the owner, and his brother, James C. Comstock, acted as his agent in the entire transaction. On January 4, 1900, James C. Comstock deposited with his brother, C. W. Comstock, $10,000, and they say that out of this deposit the $2,000 which C. W. Comstock had paid in September and October was repaid to him, and the $6,000 was paid on March 1, 1900. The option to purchase the land was assigned to James C. Comstock about October 12, 1899. He never paid his brother $1 for the assignment of this option or for the land, although the evidence is conclusive that the latter considered it of much greater value than the amount of the purchase price he had agreed to pay for it. In February, 1900, before the $6,000 was paid, James C. Comstock was notified of the claim of Trice and Beamer. These facts compel the conclusion that James C. Comstock cannot defeat this suit on the ground that he is a bona fide purchaser without notice, because the evidence convinces that he is the mere agent and representative of his brother, holding the property for him, and because he received notice of the claim of the complainants before he had paid more than $2,000 on account of the purchase of the property, and probably before he had paid anything. The actual payment of the money which constitutes the purchase price before the receipt of notice is indispensable to the maintenance of the claim that one is a bona fide purchaser without notice. Jewett v. Palmer, 7 Johns. Ch. 64, 67, 68, 11 Am. Dec. 401; Hardingham v. Nicholls, 3 Atk. 304; Harrison v. Southcote, 1 Atk. 538; Story v. Lord Windsor, 2 Atk. 630; Kiefer v. Rogers, 19 Minn. 32; Wallace v. Wilson, 30 Mo. 335.

The result is that the complainants are entitled to the relief which they sought by their bill. The evidence in this case has been carefully examined. It does not lead to the conclusion that the defendants or either of them intended to perpetrate any injustice or wrong upon the complainants or to do any act which they deemed inconsistent with the rules of honor and fair dealing. But the fiduciary relation through which the agent, C. W. Comstock, procured his information and knowledge of the location, character, and value of this tract of land, his acceptance of the agency, his leading of the probable purchaser to the property, his receipt from his principals of the expenses of his trip, forbade him from purchasing this land for himself, and thereby preventing his principals from effecting a sale of it, and charged it in his hands with a constructive trust in their favor.

The decree below is accordingly reversed, and the case is remanded to the Circuit Court, with directions to enter a decree to the effect that the defendants hold the title to the 1,925 acres of land described in the bill in trust for the sole use and benefit of the complainants; that upon the payment to the defendants or their attorneys of the amount of money which they have expended in purchasing the lands, with interest thereon at the legal rate, from the respective times of their payments, and upon the payment and surrender to James C. Comstock of his note for $30,000, which he executed in part payment of the purchase price, or upon the execution and delivery to him of a bond, with sufficient sureties, approved by the judge and conditioned to pay the note of $30,000, and to hold the defendant James C. Com-

stock harmless therefrom and from the trust deed or mortgage securing the same, the defendants shall convey the lands in dispute to the complainants; that in default of such conveyance the title shall be passed by decree; and that the defendants shall pay the costs of the suit