WHITTEN, et al. *v.* DAWS, et al.

No. 39707          December 5, 1955          83 So. 2d 744

*Hugh McIntosh,* Collins, for appellants.

*M. J. Peterson,* Jackson; *W. Vol Jones,* Waynesboro, for appellees.

Lee, J.

R. M. Whitten and others, by their bill of complaint, against S. B. Daws and others, in the Chancery Court of Wayne County sought to establish their right to an overriding royalty of 1/16th of 7/8ths of the oil and gas produced from about 107½ acres of land, as described in the bill. The right to relief was predicated on two grounds; but on dismissal of the bill, only one ground is now under review, namely, that by virtue of the facts and circumstances surrounding the written assignment involved in the case, a fiduciary relationship was created, and the complainants are entitled to the claimed royalty by reason of that relationship.

On March 23, 1944, Eddie G. Creagh and wife executed with warranty an oil, gas and mineral lease on the lands in question. The instrument provided for the usual 1/8th royalty to the lessor. There was a further provision that ''without any impairment of lessee's rights under lessor's warranty of title it is agreed that if lessor owns an interest in said land less than the entire fee simple estate, the royalties and rentals to be paid lessor shall be reduced proportionately''. Thereafter, by mesne conveyances, R. M. Whitten became the holder of the lease.

On July 31, 1952, R. M. Whitten, in consideration of $10.00 did ''sell, transfer, set over and assign to Ralph Stanley and S. B. Daws, all of my right, title and in-

terest in and to said oil, gas and mineral lease, together with all the rights and privileges accorded under said lease''. There was another provision as follows: ''There is excepted from this assignment, and the assignor reserves unto himself, an overriding royalty interest, free and clear of all development and operating costs, the equal of 1/16th of 7/8ths of all oil, gas and other minerals produced and saved under said lease''. The overriding royalty interest was to bear its proportionate part of taxes, and drilling operations were to commence within 90 days from the date of the instrument. Daws and Stanley, in accordance with the terms of their assignment from Whitten arranged for drilling operations. Either during such operations or after production had been effected, they discovered that Joe Mayes and Keathen Woodward were claiming, as a result of inheritance, a 1/75th and 1/6th interest, respectively, in the acreage. For a sufficient consideration, they obtained those outstanding interests.

Daws testified that there was no fiduciary relationship whatever between the parties; that Whitten had been begging him for two years to take this lease and drill so that he would not lose it; and that he gave Whitten $147.50, with which to pay the rentals in order to maintain the lease in force. He denied that he assumed the obligation of checking the title, when he traded with Whitten, and he did not know that there was any outstanding interest. When he found out about Joe Mayes' interest, he told Whitten about it, but Whitten failed to do anything to acquire it.

Whitten admitted that, when he first became the owner of the lease, several years before, he approached Daws about drilling. His purpose in doing so moved from the fact that the lease was getting old. He also undertook to testify, in variance of his written assignment and with no expression to that effect therein, that, if any title trouble developed, the expense could be paid propor-

tionately, and that he had been ready and willing to pay such expense. He testified that he had the title checked, but that the lawyer did not tell him, and he did not know, that there was an outstanding interest.

■■■ ■ The Chancellor, in his written opinion, expressed serious doubts that there was ever an attempt by either of the parties to have an understanding that Daws was obligated to have an abstract made or that Whitten would be benefitted from any outstanding interest. Such agreement, if made, was agreed upon prior to or at the time of the execution of the written assignment, and it was not included in the assignment. The Chancellor observed that ''Mr. Whitten's own testimony was that Mr. Daws was just an individual with whom he had been trying to do business for a year or two, and with whom he had talked about the possibility of handling his land'' and he was of the opinion that the proof did not substantiate the allegations that there was a confidential or fiduciary relationship between the parties. He heard the witnesses and found as a fact that there was nothing in the oral testimony to sustain this relationship. There is no substantial basis on which this court can say that the Chancellor was manifestly wrong inasmuch as this relationship was the disputed issue and he saw and heard the witnesses.

It is argued that Whitten put up his lease for which, at the time, he received little or nothing, and that this should indicate the existence of a fiduciary relationship. But it must be kept in mind that the lease was old. Daws and Stanley let Whitten have the money to pay the year's rental. In addition, they were required to drill within 90 days. Besides they assumed the hazard of a large expenditure from which they could have realized nothing, for it must be remembered that this was not, at that time, a proven field. Viewed objectively, the provisions of the lease and the terms of the assignment do not, on their face, create such a relationship.

The appellant contends that the principle found in Trice v. Comstock, 121 Fed. 620, 61 L.R.A. 176, 57 C.C.A. 646, applies here. The following excerpt is a succinct statement of that principle. "Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated." This excerpt was cited in Risk, et al v. Risher, 197 Miss. 155, 19 So. 2d 484.

In Hardeman v. Cowan, 18 Miss. 486, Hardeman agreed to purchase the land under general warranty from Cowan for $3,600, payable $600 the following January on outstanding judgments of $1,000, which amount was paid, and the balance in three equal annual installments thereafter. Later at a time when Cowan was in Tennessee and at a sale of the land under two of the judgments, Hardeman's wife became the real purchaser. Cowan, not knowing of the execution sale, forwarded the deed to Hardeman, but he refused to accept it because of the previous purchase by his wife. This Court, in declining to approve the title arising from the execution sale said: "It is a well established general rule, that where a purchaser has been put in possession, he cannot afterwards acquire a title and set it up in opposition to the vendor. If he extinguish an incumbrance, or buy in an outstanding title, all he can ask or require, is the repayment of the money he has so laid out."

Likewise in Wade v. Barlow, 99 Miss. 33, 54 So. 662, this same principle came into view. Wade and wife, for a consideration of $150, executed a deed to Mrs. O. V. Barlow for 40 acres of land. Subsequently they executed a correction deed with a conveyance of warranty. Thereafter Mrs. Barlow's husband discovered that this 40

acres was public land, and he applied for and obtained a certificate or patent. In a suit by Mrs. Barlow to recover the purchase price which she had paid for the land, the Court held that her measure of damages was the amount expended to protect her possession, and any other damages caused by the breach. The opinion cited Hardeman v. Cowan, supra, including the excerpt therefrom which has been set out above.

In both Hardeman v. Cowan and Wade v. Barlow, supra, the instruments were warranty deeds. The claimants were protected by the warranties therein. They had the right, under those warranties, to recover such expenditures as were necessary to protect their title and possession.

But the assignment in the case here did not contain a warranty. It simply assigned all of Whitten's "right, title and interest in and to the oil, gas and mineral lease, together with all the rights and privileges accorded under said lease." Daws and Stanley, under the assignment, had no right to require Whitten to obtain the outstanding interests for their benefit. The assignment was effective only to pass all of Whitten's estate or interest as a quitclaim and release, Section 845, Code of 1942, and estopped him and his heirs from asserting a subsequently acquired adverse title thereto. Section 846, Code 1942. In other words, Daws and Stanley acquired everything that Whitten had; but he did not own the entire interest, because the Creaghs did not have full title when they granted the lease to the predecessor in the chain of title. Thus the producer had the right to reduce royalties and rentals proportionately, in accordance with the terms of the lease. Whitten's overriding royalty was "the equal of 1/16th of 7/8ths of all oil, gas and minerals produced and saved under said lease". That of course meant all, if he had the entire right, but only such as he had, if the interest was not entire.

There is a clear distinction between the rule in Trice v. Comstock, supra, and our own cases which have been

dealt with, and the principle which is under consideration in the present controversy. On the contrary, the rights growing out of a quitclaim or deed without warranty, which is, in effect, the kind of instrument here under consideration, fall into a different category.

Thus the appellees, when they discovered that they did not have full title, under their assignment from the appellants, were at liberty to acquire the outstanding interests for themselves, without any obligation to charge the costs thereof to the appellants, or proportionately or pay them an overriding royalty on the interest so acquired.

It follows that the learned Chancellor was correct in his conclusion and that the decree of the court below should be, and is, affirmed.

Affirmed.

*Hall, Holmes, Ethridge* and *Gillespie,* JJ., Concur.

*Kyle,* J., dissenting.

I am unable to concur in the majority opinion rendered by the Court in this case.

Daws and Stanley had been put in possession of the Eddie G. Creagh land for the purpose of commencing drilling operations under the assignment obtained from Whitten. The lease that Whitten assigned to Daws and Stanley purported to cover the entire mineral interest in the 107-1/2 acres of land, and the drilling operations were begun by Daws and Stanley immediately after receipt of the assignment. The cash consideration paid for the assignment was $10. The real consideration for the assignment was Daws' and Stanley's implied promise to commence drilling operations within ninety days and the payment of the overriding royalty of 1/16th of 7/8ths of all oil, gas and other minerals produced and saved under the lease, if production resulted. By executing the assignment of the lease to Daws and Stanley, Whit-

ten placed it out of his power to drill for oil and gas on the 107-1/2-acre tract. The exclusive right to do that was vested in Daws and Stanley, provided they commenced drilling operations within ninety days. The assignment was in effect an executory contract. Daws and Stanley obtained possession of the leased premises for oil and gas development by virtue of the assignment, and good faith required that they do nothing that would impair Whitten's right to the overriding royalty reserved by him under the assignment.

In Trice v. Comstock, 121 Fed. 620, 61 A.L.R. 176, 57 C.C.A. 646, the Court said: ''Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiducuary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.'' See also 4 Pom. Eq. Jur. 5th Ed. p. 117, par. 1052; Probst v. Hughes, 143 Okla. 11, 286 P. 875, 69 A.L.R. 929; Clements v. Cates, 49 Ark. 242, 4 S.W. 777; Oldland v. Gray (Colo. 1950), 179 F. 2d 408; Wells v. Cline, 19 Ohio 165.

''The general rule is that a purchaser in possession under an executory contract cannot purchase an outstanding private title and then assert such title against his vendor while he remains in possession. His only right is to set off against the purchase price the money expended in acquiring the outstanding title. He cannot, by acquiring an outstanding title, avail himself of it so as to defeat his vendor's right to the purchase money.'' 55 Am. Jur. 805, Vendor and Purchaser, par. 381.

In the case of Hardeman v. Cowan, 10 Smedes & M. 485, this Court held that it is a well-established general rule, that where a purchaser has been put in possession, he cannot afterwards acquire an outstanding title and

set it up in opposition to the vendor; and if he extinguish an encumbrance, or buy in an outstanding title, all he can ask or require is, the repayment of the money he had so laid out. In the case of Harkreader v. Clayton, 56 Miss. 383, the Court held that the obligees in possession under a bond for title, as purchasers of land, cannot acquire a tax title thereto and set it up as an adverse and paramount to that of the obligor in the bond for title under which they entered.

Whitten had owned the lease on the Eddie G. Creagh land for a number of years. The lease according to its terms would expire on March 23, 1954, unless drilling operations were begun before that date. Whitten was anxious to have drilling operations begun without further delay. Daws and his associates were interested in drilling a test well in the vicinity of the Eddie G. Creagh farm, and the 40-acre tract which appeared to offer the most favorable prospect for a test well constituted a part of the 147-1/2 acre tract embraced in Whitten's lease. Whitten agreed to assign to Daws and Stanley the mineral lease interest in a part of the 147-1/2 acre tract, including the 40 acres on which the test well was to be drilled, upon the express condition that drilling operations should be commenced within ninety days, and with the reservation to himself of the above mentioned overriding royalty. As stated above, no substantial cash payment was made to Whitten for the assignment. Both Whitten and Daws were interested in the drilling operation about to be undertaken. That operation was in its nature a joint undertaking, Whitten furnishing the lease, and Daws and Stanley and their associates furnishing the capital to drill the well.

None of the parties knew at the time Whitten assigned the lease to Daws and Stanley that Keathen Woodward had an interest in the land. Woodward had signed the deed to Eddie G. Creagh in 1943 when Creagh purchased

the interests of the other cotenants. Creagh claimed to own the land in fee simple and warranted the title when he and his wife executed the oil, gas and mineral lease to Dwight Sanford as lessee in 1944. It was not until after the drilling operations had been begun by Daws and Stanley under the Whitten assignment that Daws and Stanley learned that Keathen Woodward had repudiated the deed executed by him to Eddie G. Creagh in 1943. It is admitted that Whitten was not notified of the Woodward interest, and that Daws sent Eddie G. Creagh along with W. H. Potts to Chicago to negotiate for the Woodward lease, that they contacted Woodward with reference to the matter, and that Daws secured the lease from Woodward.

Courts will go far to find a trust in order to protect a party from the inequitable conduct of an assignee or grantee, and even in the absence of a tenancy in common or joint adventure the relationship of the parties may be such as to require the court to impress a trust. Kennedy v. Seaboard Oil Company, 99 F. Supp. 730.

It seems clear to me that, under the rule laid down in Trice v. Comstock, supra, when Daws acquired in his own name the mineral lease covering the outstanding interest of Keathen Woodward in the land embraced and included in the Whitten assignment, Daws acquired that lease for the benefit of Whitten as well as himself, and the rights thus acquired became impressed with a trust in favor of Whitten to the extent of the overriding royalty reserved in Whitten's assignment; and Whitten had a right to enforce that trust upon repayment to Daws of the amount of money actually expended by him in acquiring the lease covering the Keathen Woodward interest.

*McGehee*, Chief Justice, and *Arrington*, Justice, Concur in this dissent.