PRUDENTIAL INSURANCE COMPANY
OF AMERICA, Plaintiff,

v.

Gregory M. CROUCH, Defendant.

No. IP 85–245–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 10, 1985.

William M. Evans, Ronald E. Elberger, Bose McKinney & Evans, Indianapolis, Ind., for plaintiff.

David Margerum, Burris, Gross, Burris & Margerum, Indianapolis, Ind., for defendant.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

This case is before the Court on plaintiff's motion for a preliminary injunction. For the following reasons, the motion is denied.

### Background

The plaintiff, Prudential Insurance Company of America (Prudential), seeks relief in this cause of action against the defendant, Gregory M. Crouch (Crouch), in the form of a declaratory judgment, injunctive relief and damages. Prudential alleges that following Crouch's resignation from Prudential, he breached an implied covenant of good faith and breached an alleged fiduciary duty to Prudential in causing the termination of certain whole life insurance

policies sold or serviced by him while a Prudential agent.

Crouch was employed by Prudential as a District Agent, selling Prudential life insurance policies exclusively, from August 9, 1974 to August 17, 1984. While a Prudential agent, Crouch developed a substantial clientele and upon his resignation, Crouch took with him a list of his client's names and addresses. This client list included Prudential policyholders whose policies were purchased through Crouch or were serviced by Crouch. Crouch returned all other property which may have belonged to Prudential at the time of his resignation.

On August 16, 1984, Crouch became a Career Agent employed by State Mutual Life Assurance Company and its wholly owned subsidiary SMA Life Assurance Company (SMA). Crouch solicited and sold insurance on behalf of SMA to his former Prudential clients. In some instances Crouch encouraged his clients to terminate their Prudential whole life insurance policies if they had a surrender value. In other instances, Crouch encouraged his clients to allow their Prudential policies to lapse by failing to pay premiums as they fell due so they could then purchase insurance through SMA.

Upon the replacement of any Prudential policy with an SMA policy and pursuant to Indiana Department of Insurance Regulation 160 IAC 1–16.1, Crouch and the Prudential policyholder would execute an "Important Notice Regarding Replacement of Life Insurance." This notice informs the policyholder of his rights regarding the replacement of insurance policies including the right to cancel the new replacement policy within twenty days for a full refund of the premium paid. A copy of each notice is delivered to Prudential, thus enabling Prudential to contact its policyholder in order to persuade the policyholder to retain the Prudential policy and cancel the replacement. At the time of the hearing on Prudential's motion for a preliminary injunction, Crouch had succeeded in replacing approximately fifty Prudential policies with SMA policies.

Crouch was employed by Prudential pursuant to an Agent's Agreement and received compensation pursuant to a collective bargaining agreement between Prudential and the United Food and Commercial Workers International Union (AFL–CIO & CLC). Briefly, Crouch received compensation in the form of commissions on insurance policies he sold and serviced. Upon the sale of a whole life insurance policy, the selling agent became provisionally entitled to a prescribed percentage of the premiums paid by the policyholder for the first four years of the policy (45–53% for year 1, 10–11% for each of years 2, 3, and 4). Thereafter, the agent would be entitled to a service commission in the amount of 2% of the annual premium paid by the policyholder.

Commissions are credited to the selling or servicing agent's account upon the sale or annual renewal of a policy but the commission credit is subject to adjustment if the policy lapses for nonpayment of monthly premiums. Should the policyholder, following payment of a premium, cancel the policy, the policyholder may obtain a refund of some or all of the unearned premium. In such case, the agent's commission may be reduced correspondingly. Upon termination of the agent's employment with Prudential, no further commissions are paid even though premiums subsequently may be received under those policies.

The schedule of commissions (approximately 50% new policy, 10% renewal for each of years 2–4, and 2% service thereafter) is based upon an expectation that a whole life insurance policy will remain in force for approximately fifteen years. Additionally, the premiums and investment income therefrom do not cover the expenses incurred until five years after issue.

Neither the Agent's Agreement nor the Collective Bargaining Agreement expressly prohibits Prudential agents from engaging in replacement activities or otherwise soliciting or selling insurance to Prudential policyholders following termination of their employment with Prudential. Crouch's

Agent's Agreement contains only the following provisions respecting his duties to Prudential following termination of employment:

"Sec. 7(a) That upon termination of this Agreement either by myself or the Company, or at any other time upon request by the Company, I will immediately submit said books and records for an inspection and accounting, to be made in accordance with the rules of the Company then in force.

(b) That all books, records, and supplies furnished to me by the Company shall be the property of the Company; and that, upon the termination of this Agreement, I will hand over said books, records, and supplies to a proper representative of the Company."

Although Crouch returned Prudential's property upon termination of his employment, Crouch took with him the names and addresses of his clients. Crouch's client list contained no other information except names and addresses.

Prudential makes no claim against Crouch under Section 7, above, and does not seek to enjoin Crouch from using the client list in selling additional insurance to his former Prudential clients. Rather, Prudential seeks to prevent Crouch from inducing or endeavoring to induce his former clients to cancel their Prudential policies or to allow them to lapse by nonpayment of premiums in order that Prudential policies may be replaced by other insurance policies sold by or through Crouch. Prudential argues that during Crouch's employment, Crouch made an implied promise of good faith and became subject to a fiduciary duty to Prudential and that these obligations survived the termination of the employment relationship to proscribe Crouch's replacement activities.

### Discussion

Prudential seeks a preliminary injunction against Crouch to prevent him from engaging in replacement activities with his former Prudential clients. The decision whether to grant or deny a prelimi-nary injunction rests in the sound discretion of the trial court. Factors to consider in this regard are whether the plaintiff has shown that it has (1) a reasonable likelihood of success on the merits, (2) that no adequate remedy at law is available, (3) that irreparable injury will result prior to the final determination in the case absent injunctive relief, (4) that the threatened harm to the plaintiff outweighs the harm the injunction may cause the defendant, and (5) that the granting of the injunction will not disserve the public interest. *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380 (7th Cir.1984); *Shaffer v. Globe Protection, Inc.,* 721 F.2d 1121, 1123 (7th Cir.1983); *see also Steenhoven v. College Life Insurance Co. of America,* 458 N.E.2d 661, 664 (Ind.App.1984); *College Life Insurance Co. of America v. Austin,* 466 N.E.2d 738, 741–42 (Ind.App.1984).

In determining whether Prudential is reasonably likely to succeed on the merits, this Court, sitting in diversity, is constrained to apply the substantive law of Indiana. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Prudential has defined the issues and relief sought in this case narrowly to avoid the direct application of Indiana precedent. Nevertheless, existing Indiana law in this area is instructional and must be examined to determine whether Prudential's legal arguments are consistent with the law in this state.

The common law in Indiana favors competition. Businesses may protect their goodwill, which may include confidential customer information and repeat business for certain products, only "by contract or against a conspiracy to appropriate it by unlawful acts." *Woodward Insurance, Inc. v. White,* 437 N.E.2d 59, 67 (Ind.1982); *Licocci v. Cardinal Associates, Inc.,* 445 N.E.2d 556 (Ind.1983). If an employee is not bound to a covenant not to compete and does not misappropriate a trade secret or confidential information, he is free to exercise his right to compete against his former employer. *Woodward, supra,* at 67. Should an employer contract with its em-

ployee to restrict the employee's right to compete following termination of the employment, the covenant not to compete will be strictly construed against the employer because such covenants are in restraint of trade. *Licocci v. Cardinal Associates, Inc., supra; Woodward Insurance, Inc. v. White, supra; College Life Insurance Co. of America v. Austin,* 466 N.E.2d 738 (Ind. App.1984). Additionally, the Indiana Supreme Court stated in *Licocci* that "if the covenant as written is not reasonable, the courts may not create a reasonble restriction under the guise of interpretation, since this would subject the parties to an agreement they had not made." 445 N.E.2d at 561.

In the absence of a restrictive covenant, Indiana law prohibits former employees from misappropriating and using trade secrets or confidential information acquired during employment for his or a competitor's benefit in a manner which is detrimental to the former employer. *See Woodward Insurance Inc. v. White, supra;* Ind.Code § 24-2-3-2 (Supp.1984). This protection afforded to trade secrets, however, has not been extended to encompass policyholder lists and other information compiled by insurance companies regarding their policyholders. *College Life Insurance Co. of America v. Austin, supra; Steenhoven v. College Life Insurance Co. of America,* 458 N.E.2d 661, *reh. denied with opinion,* 460 N.E.2d 973 (Ind. App.1984) (trans. denied). Such information concerning policyholders is generally not confidential. This information is readily obtainable from the policyholders, the policies, and from the insurance company. Although the names and addresses of policyholders may not be "readily obtainable" as other information is, insurance companies generally do not hold the names and addresses of their policyholders in confidence, *Woodward Insurance, Inc. v. White, supra,* and there is no independent value attaching to such a policyholder list. *Steenhoven v. College Life Insurance Co. of America,* 460 N.E.2d 973 (Ind.App.1984). Therefore, policyholder lists do not constitute confidential information entitled to protection as a trade secret.

In the present case, Prudential recognizes that Crouch's Agency Agreement contains no restrictive covenant and that the policyholder list retained by Crouch is not confidential information entitled to protection as a trade secret. Nevertheless, Prudential contends that Crouch is bound by an implied promise of good faith and by a fiduciary duty which survived the termination of Crouch's employment with Prudential. Prudential argues that this implied promise and continuing fiduciary duty preclude Crouch from endeavoring to replace Prudential policies with insurance policies of other companies following termination of his employment with Prudential.

First, Prudential relies upon the general rule that every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. Restatement (2d) of Contracts § 205 (1981); 17A C.J.S. Contracts § 328; *see Ang v. Hospital Corp. of America,* 182 Ind.App. 381, 395 N.E.2d 441 (1979). This implied covenant precludes a party to a contract from destroying or injuring the right of the other party to receive the fruits of the contract, but as a negative covenant, it will be applied only when necessary to effectuate the clear intent of the parties. 17A C.J.S. Contracts § 328.

Prudential's "fruits" under its employment contract with Crouch are the premiums paid on the life insurance policies sold or serviced by Crouch. Crouch's "fruits" under the contract are the commissions paid from those premiums. Pursuant to the implied covenant of good faith and fair dealing therefore, Prudential and Crouch are precluded from destroying each other's rights to premiums and commissions received or earned during the employment relationship.

Crouch is entitled only to commissions based upon premiums received by Prudential during Crouch's employment, and following termination of the employment, Crouch is not entitled to future commissions even though premiums may be paid

to keep the policies in force. Prudential, however, asserts that it is entitled not only to keep the premiums received during Crouch's employment but also to preclude Crouch from interfering with its ability to receive all future premiums which might be paid under the policies which had been handled by Crouch while he was employed with Prudential.

■ The application of the implied covenant of good faith and fair dealing to prevent an insurance agent from destroying his former employer's right to keep and enjoy premiums which were received *during* the employment has been recognized in other jurisdictions and is not inconsistent with the law in Indiana. *Scottish Union & National Insurance Co. v. Dangaix,* 103 Ala. 388, 15 So. 956 (1897); *American Steam-Boiler Insurance Co. v. Anderson,* 130 N.Y. 134, 29 N.E. 231 (1891). A contractual relationship arises when an insurance agent procures the payment of a premium to his employer; the employer then becomes obligated to pay to the agent a commission, which generally is a percentage of an annual premium amount. The agent also becomes obligated not to destroy the employer's right to keep and enjoy the premium which had been paid. If the policy is cancelled prior to the expiration of its term (established by the amount of premium paid), the employer may be required to refund to the policyholder any unearned premium. When policies handled by a former employee are cancelled due to that employee's replacement activities, the former employer may hold its former employee liable for the commissions paid to him which are attributable to the refunded premiums. *Scottish Union & National Insurance Co. v. Dangaix, supra; American Steam-Boiler Insurance Co. v. Anderson, supra.* Therefore, to the extent that the agent received a commission based upon the receipt of a premium by the company, the agent may not interfere with the insurance company's right to keep and enjoy that premium.

The implied covenant of good faith and fair dealing may be extended no further.

Crouch is obligated under the employment contract only to the extent that he receives compensation for his services. Following completion of the obligations for which he is paid, he is free to exercise his right to compete against his former employer as provided under Indiana law. *College Life Insurance Co. of America v. Austin, supra; Steenhoven v. College Life Insurance Co. of America, supra; Woodward Insurance Inc. v. White, supra.*

Prudential argues that the compensation paid to Crouch on new policies imposed obligations upon Crouch which extended past the policy period for which each premium was paid. Prudential suggests that the commissions paid during the first four years of a whole life insurance policy are based upon the expectation that the policy will remain in force at least five and usually about fifteen years. Prudential, however, does not condition receipt of the first four annual commissions upon the policy being in force for five or more years. Rather, the payment of commissions by Prudential is conditioned only upon its receipt of corresponding premiums. Therefore, the contractual obligations of Prudential and Crouch are based upon the policy period for which a premium is received and a commission is paid and do not extend further.

■ In conclusion, under the implied covenant of good faith and fair dealing, Crouch is precluded from causing the cancellation of Prudential insurance policies which he sold or serviced and for which he received a commission when such cancellation would require Prudential to refund any portion of the premium to the policyholder. Crouch is contractually obligated only to preserve Prudential's right to keep and enjoy the premiums received by Prudential during Crouch's employment. Following completion of the obligations under the employment contract for which Crouch received compensation, the implied covenant terminates, and thereafter Crouch may engage in competition against Prudential which may include efforts by Crouch to

cause the lapse of Prudential policies for nonpayment of future premiums.

Alternatively, Prudential relies upon the general rule of agency law that every agent owes a fiduciary duty to his principal to act with good faith and loyalty in furtherance of the principal's interests. 3 C.J.S. Agency § 271; 3 Am.Jur.2d Agency § 199. This fiduciary duty precludes the agent from engaging in conduct dealing with the subject matter of the agency for his own benefit or in derogation of the interests of his principal. Upon termination of the agency, the fiduciary duty generally no longer applies and the former agent may compete with his former principal. 3 C.J.S. Agency § 287; 3 Am.Jur.2d Agency § 222. Nevertheless, it is universally recognized that the agent, following termination of the agency, may not use trade secrets or other confidential information acquired during the agency in a manner which is detrimental to the principal's interests in the subject matter of the agency. 3 C.J.S. Agency § 287; 3 Am.Jur.2d § 222. Additionally, an agent is bound by his fiduciary relationship to refrain from interfering with the principal's ability to accomplish the purpose of the agency. *Trice v. Comstock*, 121 Fed. 620 (8th Cir. 1903).

This latter principle, although stated in broad language by the court in *Trice*, has been narrowly applied. The duty of an employee to a former employer must be considered alongside the common-law right of an employee to compete against his former employer. *Group Ass'n Plans, Inc. v. Colquhoun*, 466 F.2d 469 (D.C.Cir.1972). The continuing duty described in *Trice* does not abrogate the right to compete, even "steal" clients following termination of employment. *Id.* at 474. Rather, the rule in *Trice* is applied only to prohibit an employee from completing transactions, which the employee negotiated during his employment, for his own benefit following termination of the employment. *Id. See also Brown & Root, Inc. v. La Bauve*, 219 F.Supp. 179 (W.D.La.1962), *aff'd* 319 F.2d 582 (5th Cir.1963); *Opie Brush Co. v.*

*Bland*, 409 S.W.2d 752 (Mo.App.1966); *Raines v. Toney*, 228 Ark. 1170, 313 S.W.2d 802 (1958); *Byrne v. Barrett*, 268 N.Y. 199, 197 N.E. 217 (1935); *Connelly v. Special Road & Bridge District*, 99 Fla. 456, 126 So. 794 (1930). This application of the rule in *Trice* is consistent with the law in Indiana which recognizes the right to compete against one's former employer absent contractual or statutory restrictions. *See College Life Insurance Co. of America v. Austin, supra; Steenhoven v. College Life Insurance Co. of America, supra; Woodward Insurance, Inc. v. White, supra.*

In the present case, therefore, the "purpose of the agency" must be viewed in terms of the "transactions" which Crouch was employed to complete on behalf of Prudential. Crouch was employed to sell and service insurance policies so that Prudential would receive the premiums thereunder. With respect to each insurance policy sold or serviced by Crouch, the "purpose of the agency" or the "transaction" was completed when the premium was paid to Prudential. Each sale of a new policy or renewal of an existing policy is represented by the payment of a premium and constitutes a separate transaction. Under the continuing fiduciary duty owed by Crouch to Prudential, therefore, Crouch is prohibited from negotiating any sale (either original sale or renewal) of a life insurance policy during his employment with Prudential and then completing that sale after his resignation by receiving the premium payment for his own or his new employer's benefit.

Again, consistent with the common-law right to compete against one's former employer, Crouch is otherwise free to engage in replacement activities after termination of his employment which may include inducing his former clients to allow their Prudential policies to lapse.

In conclusion, Prudential has shown a reasonable likelihood of success on the merits only to a limited extent. Pursuant to the implied covenant of good faith and fair dealing, Prudential may hold Crouch

472

liable, with respect to policies sold or serviced by Crouch, for any commissions which are attributable to unearned premiums which Prudential was required to refund to policyholders due to Crouch's replacement activities. Pursuant to the fiduciary duty of an agent to his principal, Crouch may be held liable for the premium received on each sale or renewal which was negotiated by him during his employment with Prudential.

 Under these two theories, Prudential may be able to recover damages against Crouch. The calculation of such damages would not be speculative and Prudential has not shown that damages would be inadequate for the limited recovery available. Therefore, Prudential has an adequate remedy at law.

Additionally, Prudential has not shown irreparable injury. Prudential is given notice of each replacement policy and has an opportunity to convince the policyholder to cancel the replacement policy and obtain a full refund of the premium paid thereon within twenty days of delivery of the replacement policy. Moreover, Prudential is not prohibited from soliciting its former policyholders at any time in an effort to replace their new policies with Prudential policies. Therefore, Prudential has ample opportunity to compete for business against any replacement attempts and cannot claim that it will be irreparably harmed if an injunction does not issue. *Steenhoven v. College Life Insurance Co. of America,* 458 N.E.2d at 668, n. 20.

Furthermore, Prudential has shown neither that the threatened harm to it outweighs the harm an injunction would cause Crouch during the pendency of this action nor that an injunction is in the public interest. Imposing a restrictive covenant upon Crouch would greatly hinder his ability to engage in his profession. In light of Prudential's access to an adequate remedy at law, the injury to Prudential in the absence of an injunction does not outweigh the threatened harm to Crouch. Moreover, Prudential could have contracted with

Crouch to restrict Crouch's right to compete following his employment, but did not do so. The public interest favors competition and an injunction imposing a restrictive covenant upon parties who did not agree to such a covenant would greatly disserve the public interest.

For the foregoing reasons, therefore, Prudential is not entitled to injunctive relief and its motion for a preliminary injunction will be denied.