The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

Mark A. DIEMER, Defendant.

No. F 84–364.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 18, 1986.

William L. Sweet, James P. Fenton, Fort Wayne, Ind., and Walter W. Siebert, Chicago, Ill., for plaintiff.

Leonard E. Eilbacher, Fort Wayne, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the Court on the defendant's, Mark A. Diemer (Diemer), renewed motion to dismiss the plaintiff's, Prudential Insurance Company of America (Prudential), complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This case was filed on November 14, 1984, in the United States District Court for the Northern District of Indiana, Fort Wayne Division. Judge William C. Lee recused himself on December 12, 1984, and this Judge assumed jurisdiction on January 7, 1985. The defendant filed a motion to dismiss and memorandum in support on December 27, 1984. The plaintiff filed a memorandum in opposition on January 8, 1985. The Court denied that motion for lack of sufficient record on January 29, 1985. The defendant filed a renewed motion to dismiss and supporting memorandum on February 26, 1985. A hearing on the motion was held on March 8, 1985, and the matter was taken under advisement. The plaintiff was granted leave to file supplemental brief, which was subsequently filed on April 22, 1985. The defendant filed a response on April 26, 1985. The defendant filed supplemental authority and brief on August 9, 1985; subsequently, on August 23, 1985, the plaintiff filed a supplemental memorandum.

## BACKGROUND

Prudential employed Diemer for approximately four and one half years as a district agent. Both parties signed a written agreement; neither party alleges the existence of any other written agreement. Prudential does not allege that Diemer breached any of the express provisions of the written agreement. Prudential limits the application of the legal theories to Diemer's sale, service and replacement. Diemer complied with all the requirements of Indiana Administrative Code, Sections 1–16.1–1 *et seq.*[1] 760 IAC 1–16.1–1 *et seq.* (1984). Whenever Diemer attempted to replace a Prudential policy the code provides for notice to Prudential. Diemer replaced Prudential products which he either sold or serviced during the duration of his employment contract. Prudential raises two theories of recovery. First is a claim based on a breach of an implied covenant of good faith and fair dealing. Second is a claim based on a breach of a fiduciary obligation owed to a principal by an agent. Both of these legal theories are dependent on the contract. The language of Sec. 2 of the contract states:

> (a) That, after being properly licensed, I will canvass regularly for applications for insurance policies and annuity contracts of the kinds and upon the plans sold by the Company; and that I will advocate the class of insurance most suitable to the applicant's position and will not press for a larger amount of insurance than the applicant is able to maintain.
>
> (b) That I will endeavor to keep in force the existing Insurance of the Company, to secure the reinstatement of insurance that has lapsed and perform all the duties, incident to the care and conservation of the Company's business, that may

be assigned to me from time to time by the Company.

In addition Sec. 13 of the contract states: "That my appointment as an Agent *and* this Agreement may be terminated either by myself or the Company at any time." (emphasis added).

Diemer received commissions for the products he sold or serviced. The amount of the commission varied, and was dependent on the type of product and the number of years it had been in force or was a new sale. The cost of "putting a whole life policy on the books" includes the commission paid to the agent, the expense of underwriting, record keeping, overhead, sales override commissions payable to field office sales management, and in some cases the expense of medical examination. Prudential alleges that the payment of a first year premium is not sufficient to cover the costs of putting a whole life policy on the books. In addition, the payment of the commission was contingent upon the payment of the annual premium.

## DISCUSSION

The Court in analyzing a motion to dismiss utilizes the standards established by the Supreme Court of the United States in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Supreme Court held that:

> In appraising the sufficiency of the complaint we follow of course the accepted rule that a complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

*Id.* at 45–46, 78 S.Ct. at 102. *See, Action Repair v. American Broadcasting Companies, Inc. d/b/a WLS–TV*, 776 F.2d 143 (7th Cir.1985); *Fromm v. Rosewell*, 771

---

1. This portion of the Indiana Administrative Code was affected by I.C. 27–4–1–8 which addresses unfair competition practices. The express purpose of 760 IAC 1–16–1 et seq. is "[t]o regulate the activities of insurers and agents with respect to replacement of all forms of existing life insurance ..." 760 IAC 1–16–1(a) (1984). The regulations require that notice of

any replacement of life insurance be sent to the company whose policy is being replaced "within three working days of the date the application is received at [the replacing insurer's] Home or Regional Office, or the date its policy is issued, whichever is sooner." 760 IASC 1–16.1–6(c)(1)(3) (1984).

F.2d 1089, 1091 (7th Cir.1985). In addition, "pleadings are to be liberally construed and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). "A complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Ass'n v. First Condominium Development Co.,* 758 F.2d 203, 207 (7th Cir.1985), citing, *Sutliff v. Donovan,* 727 F.2d 648, 654 (7th Cir.1984). Furthermore, under Indiana law "[t]he ultimate determination of whether a covenant is reasonable is a question of law for the courts." *Donahue v. Permacel Tape Corp.,* 234 Ind. 398, 127 N.E.2d 235 (1955); *College Life Ins. Co. of America v. Austin,* 466 N.E.2d 738 (Ind.App. 1 Dist.1984); *Frederick v. Professional Building Maintenance Industries, Inc.,* 168 Ind.App. 647, 344 N.E.2d 299 (1976).

The particular way in which the plaintiff constructed his claims and legal theories created the situation in which no Indiana precedent is directly on point. However, the Court is not without guidance on the issues raised. Judge Dillin's opinion in *Prudential Insurance Company of America v. Crouch,* 606 F.Supp. 464 (S.D.Ind. 1985), provides a cogent analysis of the legal theories raised by the plaintiff. Both parties argue that Judge Dillin's opinion supports their respective positions. Although Judge Dillin clearly accepts as viable these two legal theories, this Court does not interpret that decision as extending application of those theories to the facts in this case.

## BREACH OF THE IMPLIED COVENANT

The scope of an implied covenant of good faith depends on the "fruits" of the contract. See *Ang v. Hospital Corp. of America,* 182 Ind.App. 381, 395 N.E.2d 441 (1979); see also Restatement (Second of Contracts § 205 (1981); 17A C.J.S. *Contracts* § 328 (1963); 55 Williston, *A Treatise on the Law of Contracts* § 661 (3d ed. 1961). The contract which created the implied covenant of good faith was a bilateral contract, and the "fruits" of the contract were also bilateral. Diemer's fruits of the contract were the commissions paid to Diemer by Prudential. The receipt of the fruits of the contract by Diemer was contingent upon Diemer performing services which provided the fruits of the contract to Prudential. The fruits of the contract enjoyed by Prudential from the employment contract between Diemer and Prudential, were the sale of new policies, servicing of assigned policies and receipt of the premiums which were directly attributable to the sales or service of Diemer for which Diemer was paid a commission. The fruits to each party are inexorably linked. Diemer would not receive a commission unless the annual premium was paid on a policy he sold or serviced. Furthermore, if a policyholder cancelled a policy during the policy year, Diemer was required to refund to Prudential a portion of the commission paid on that policy. However, Prudential does not claim that Diemer has refused to reimburse Prudential for commissions paid to him on annual premiums, for policies subsequently cancelled, which were refunded to the policyholder. Any premiums paid to Prudential, for which Diemer would not receive a commission are not the fruits of the employment agreement but are the fruits of the insurance contract between the policyholder and the insurer.

"The application of the implied covenant of good faith and fair dealing to prevent an insurance agent from destroying his former employer's right to keep and enjoy premiums which were received *during* the employment has been recognized in other jurisdictions and is not inconsistent with the law of Indiana." *Prudential Ins. Co. of America v. Crouch, supra,* at 470, (emphasis added), citing, *Scottish Union & National Insurance Co. v. Dangaix,* 103 Ala. 388, 15 So. 956 (1897). (An agent who induced several policyholders to cancel policies, which the agent had sold for his former employer, was required to repay to his former employer a portion of the commis-

sion which the agent received after the payment of the annual premium); *American Steam-Boiler Insurance Co. v. Anderson,* 130 N.Y. 134, 29 N.E. 231 (1891) (An Agent was required to repay 30% of his commission on certain policies because 30% was the amount of the premium the agent's former employer had to refund to the policyholder and the agent's commission was directly related to the annual premium refunded).

Prudential seeks to extend the effect of the covenant of good faith to infinity, specifically following termination of any employment contract. Although, this particular application of these legal theories has been addressed only by Judge Dillin in *Prudential Ins. Co. of America v. Crouch,* there is Indiana case law which provides guidance and clearly rejects such an extension. See *College Life Ins. Co. of American v. Austin, supra; cf., Steenhoven v. College Life Ins. Co. of America,* 458 N.E.2d 661 (Ind.App. 2 Dist.1984). In those two cases the facts were similar and the insurance company was attempting to prevent a former agent from replacing that company's policies which were sold or served by the former agent. In *Steenhoven* the trial court enjoined the agent from the activity complained of, but the Appellate court reversed the injunction to the extent that it "enjoined him from contacting his past and present clients who hold College Life policies and from inducing them to terminate or replace those policies." *Steenhoven v. College Life Ins. Co. of America, supra,* at 667. In the *Austin* case College Life had revised their employment agreement. The new contract contained an express provision which stated:

> Second party [Austin] hereby acknowledges and agrees that second party shall not at anytime while this contract is in full force and effect or subsequent to the termination thereof, induce or endeavor to induce any policyowner of Company to discontinue the payment of premiums or to relinquish any policy.

*College Life Ins. Co. of America v. Austin, supra,* at 743. The court held that the effect of the "antireplacement" provision was void and unenforceable. Prudential argues that an implied covenant of good faith and fair dealing, under the employment contract with Diemer, should prohibit the same activity which the express language in *College Life Ins. Co. of America v. Austin* sought to prohibit. It is illogical to believe that Indiana law would enforce by implied covenant that which is void and unenforceable by express contract.

■ Implied covenants are not favored. *Sheets v. Selden,* 74 U.S. 416, 19 L.Ed. 166 (1868). Indiana takes an even stronger position against implied covenants when they "restrict another party's freedom to enter contracts or engage in other legitimate business." Cf. *Keystone Square v. Marsh Supermarkets, Inc.,* 459 N.E.2d 420, 423 (Ind.App. 3 Dist.1984); citing *Howard Johnson v. Parkside Development Corp.,* 169 Ind.App. 379, 348 N.E.2d 656 (1979). Prudential admits that Diemer complied with the requirements of IAC 1–16.1–1 *et seq.* when he replaced Prudential's policies. Therefore, Diemer was legitimately entering into contracts on behalf of his new employer. It is clear that regardless of how Prudential chooses to characterize the legal theory, Indiana law rejects as a matter of law the restrictions which Prudential seeks to place on Diemer.

## BREACH OF FIDUCIARY DUTY

■ The second legal theory which Prudential presents as a basis of recovery, is the breach of a fiduciary duty of an agent. Agents owe their principal a fiduciary duty to refrain from interfering with the principal's ability to accomplish the purpose of the agency. See, *Trice v. Comstock,* 121 Fed. 620 (8th Cir.1903); *Washington Theatre Co. v. Marion Theatre Corp.,* 119 Ind.App. 114, 81 N.E.2d 688 (1948) (en banc); see also, 3 C.J.S. *Agency* §§ 199, 222 (1962). The "purpose" of the agency created by the contract between Prudential and Diemer was to sell and service Prudential's insurance policies. *Accord, Prudential Ins. Co. of America v. Crouch, supra,* at 471. The duty described in *Trice* does

not prohibit an agent from competing with his former employer, it merely prohibits an employee from completing transactions which the employee negotiated during his employment, for his own benefit following termination of employment. *Id, citing, Group Ass'n Plans, Inc. v. Colquhoun,* 466 F.2d 469, 474 (D.C.Cir.1972); *see also, Brown & Root, Inc. v. LaBauve,* 219 F.Supp. 179 (W.D.La.1962), *aff'd,* 319 F.2d 582 (5th Cir.1963); *Opie Brush Co. v. Bland,* 409 S.W.2d 752 (Mo.App.1966); *Raines v. Toney,* 228 Ark. 1170, 313 S.W.2d 802 (1958); *Byrne v. Barrett,* 268 N.Y. 199, 197 N.E. 217 (1935); *Connelly v. Special Road & Bridge District, No. 5.,* 99 Fla. 456, 126 So. 794 (1930). Indiana follows the holding in *Trice. See, Washington Theatre Co. v. Marion Theatre Corp., supra,* 81 N.E.2d at 693.

■ In this case as in *Prudential v. Crouch* "the 'purpose of the agency' must be viewed in terms of the 'transactions' which [Diemer] was employed to complete on behalf of Prudential". *Prudential Ins. Co. of America v. Crouch, supra,* at 471. Each transaction must be analyzed solely as it relates to Diemer's duty under the employment contract. Under the contract each transaction began when Diemer approached a prospective client or current policyholder. Each transaction was completed when the prospective client or current policyholder paid the annual or renewal premium. Prudential attempts to characterize each sale of whole life insurance as an incomplete transaction. Such a characterization is not founded in fact. The payment of the annual premium is only sufficient to bind the insurer for one year. The policyholder may renew the transaction by paying a renewal premium. The purpose of the agency between Diemer and Prudential, as to any one policy was fulfilled when the annual or renewal premium was paid on each policy he sold or serviced. *Accord, Prudential Ins. Co. of America v. Crouch, supra,* at 471. The fiduciary duty which Diemer owed to Prudential only prohibits him "from *negotiating* any sale (either original sale or renewal) of a life insurance policy *during* his *employment* with Pru-

dential and then *completing* the sale *after* his *resignation ...*" *Id.* (emphasis added). Assuming that all facts alleged in the complaint are true Prudential has failed to state a claim for breach of any fiduciary duty owed by Diemer, under the employment contract.

## CONCLUSION

■ The attempted extension of the legal theories presented by this case would clearly have an anticompetitive effect. This is inconsistent "with the common law right to compete against one's former employer ..." Under Indiana law covenants or fiduciary duties which continue beyond the termination of an employment agreement, restrain trade, and have an anticompetitive effect are disfavored *Prudential Ins. Co. of America v. Crouch, supra,* at 468–69; *Licocci v. Cardinal,* 445 N.E.2d 556, 561 (Ind.1983); *College Life Ins. Co. of America v. Austin, supra,* at 743–44; *see also,* 16B Appleman, Insurance Law and Practice §§ 9014 and 9025 (1981). Based on the record before the Court "it appears beyond doubt that [Prudential] can prove no set of facts in support of [its] claim that would entitle [it] to relief for either, a breach of an implied covenant of good faith and fair dealing, or a breach of fiduciary duty." The law of Indiana rejects application of those theories to the facts alleged in Prudential's complaint.

Accordingly, and for all the above reasons, it is the ORDER of the Court that the defendant's, Mark A. Diemer, motion to dismiss be, and is hereby, GRANTED. It is FURTHER ORDERED that the plaintiff's, Prudential Insurance Company of America, Complaint be, and is hereby, DISMISSED without prejudice. SO ORDERED.